There are many Governments of the Virgin Islands v. Donovan. Good morning. May it please the Court, my name is Nicole Thompson. I represent Appellant Denise Donovan. May I reserve three minutes for rebuttal? Granted. We request that this Court reverse the judgment against Donovan for murder of Clayton Laurent and her conviction to life imprisonment without the possibility of parole. There are three grounds upon which this Court can grant her a new trial. First, erroneous character evidence was admitted into testimony regarding the victim as a loving father. In addition, there was erroneous evidence admitted regarding Donovan's prior bad acts as violence with a knife and particularly against this victim. In addition, there was evidence that was erroneously admitted of Donovan stating to a warden while she was held for his murder that she was locked up for killing a friggin' island man. The prejudicial impact on the jury was substantial and outweighed the probative value of showing that she acted with malice. Finally, there was an exclusion of a neutral third party witness who could testify as to Donovan's daughter's asthmatic condition. Well, you know something, I think the other points you raised are very beneficial and bonafide. But the question whether or not her kid had asthma was not even contradicted. It was acknowledged it had no relevancy to anything in the case. We submit, Your Honor, that evidence by a neutral third party as to Donovan's daughter's asthmatic condition would have been favorable and material in this case because we only had the testimony of Donovan's sister and Donovan's daughter as to that condition. But it wasn't contradicted. Yes, Your Honor, but its exclusion prevented the jury from even considering a neutral third party witness. But did it help you at all in advancing your theory that she went to get medicine for her daughter? To me, I look at the fact that the daughter had asthma as unchallenged. But if that witness had testified, that witness would have been unable to say anything more than she had asthma. I don't see how it would help you. Which was not in dispute. Not in dispute. But, Your Honors, the evidence— You have better arguments you could be making, I think, Mr.— I agree with my sister that—why don't you stay on the character and the bad act? Yes, Your Honor. The evidence is much more devastating from your point of view. The superior court impermissibly entered character evidence of Donovan's prior bad acts and Mr. Laurent's good character. This evidence substantially influenced the jury's verdict, and the district court erred in ruling that its admission was harmless error. The district court simply did not apply the correct standard of review to analyze whether the inclusion of this impermissible character evidence resulted in harmless error. Alicia Woodley testified that Laurent was a loving father. Beverly Roach testified that Donovan had threatened the victim with a blade four months prior to the murder. Clayton Laurent, the victim's son, testified that Donovan picked up a knife after an argument and told the victim not to push her. Okay, after each one of those incidents, or whatever, the district court balanced carefully and gave a very lengthy, comprehensive limiting instruction, correct? That's true. But even with the court's limiting instruction, and even with the jury instructions after the trial, the district court still held that this evidence should not have been admitted. You say the district court, I think we tend to get confused. You mean the appellate division. Yes, the appellate division. Excuse me. Even with those limiting instructions, and even with the… They held it was error. Let's get back down to the… There's no question the appellate division said it was error, but then harmless error. But at the trial level, could you… Judge Barrett has indicated that the trial judge went through a balancing test. How did that balancing test not make any sense, that there was no probative value which outweighed the prejudice of showing the character of the decedent? Basically, at the trial level? Yes. Well, the trial court just found that it wasn't – that the prejudice didn't outweigh the harm. But what was the analysis that it made that you find to be faulty as far as you're concerned? Yes, Your Honor, we submit that the evidence of the victim as a loving and caring father juxtaposed with the evidence of Donovan… Bad acts. …as her bad acts, that she was jealous, that she was callous after his murder, that she had threatened people – the victim himself prior to the murder with a knife – that the prejudice substantially outweighed the probative value. Now what did the trial judge find that the relevance was to this – of this character evidence that so overwhelmed the prejudice that was available? With respect to her prior bad acts? Prior bad acts, or the – or character – or the knife-wielding of the prior bad acts, yes. Or the character of the decedent, either one. Well, the trial judge found that the prior bad acts went to show her premeditation, her motive, her preparation, and also her malice. But we submit again that although there was probative value that the trial court found, the substantial prejudice outweighed that probative value. And the district court didn't apply the correct standard of review to analyze whether the admission of this evidence was… When you say the district court, you're speaking about the appellate division. Yes, excuse me. The appellate division. That's your whole reply brief. That's really what you're telling us. Yes. You're almost not conceding the error, but you're saying when the appellate division considered this issue, they found error, but they – and they found harmless error, but their definition of the harmless error test was wrong. Yes, Your Honor. But under the correct definition of harmless error, why was it not harmless error here? You have a lot of evidence. Yes, Your Honor, but the evidence in this case is largely circumstantial, and it's based on statements of… That's as good as direct evidence. But the evidence is largely based on statements that the government found to be implausible, statements by Donovan, for example. The government was very… Yeah, that's right. I mean, it made no sense. How many versions of the offense? Excuse me? The guy was in rigor mortis when the cops – I mean, there's so – is this the case or is it one of the other cases where the – described as the mishmash of circumstantial evidence? That's another one that the defendant is describing, the circumstantial evidence in the government's case. But you've got some powerful circumstantial evidence here that you have to deal with for you to say that this – to show us that this verdict should be thrown out. Well, there's some evidence that Donovan was unemotional and even maybe callous, although she witnessed her boyfriend's murder, according to the government, that her story changed slightly, but her story didn't change so much as to say that it impugned her credibility. Am I forgetting that she first said the perpetrator was 5'6 and then later said he was 6'2 and over 200 pounds? According to the government… Did I get that wrong? No, Your Honor. I wouldn't call that changing slightly. And if I also remember correctly, the 5'6 person with jeans and a T-shirt happened to describe Donovan herself. Your Honor, a lot of people… And I looked in the mirror and later decided that was a bad idea to describe the perpetrator in that way. A lot of people wear jeans and T-shirts in the Virgin Islands, Your Honor. No, but do they then come back shortly thereafter and say, oh, I was wrong, it wasn't someone who was 5'6 wearing jeans and a polo shirt, it was someone who was 6'2, 200 and whatever pounds? That's quite a remarkable, remarkable change of story, isn't it? No, we submit that it's not a remarkable change of story under the circumstances where Donovan apparently came upon her boyfriend being attacked by an intruder and wrestled… She was so upset about it she called her rival and said, he's dead, dead, dead. She was that upset about it. Well, she did call the police as well, and she was emotional after it. Oh, I think just the opposite. From the way I read the record, she was not emotional at all, and that was the testimony. Well, she was emotional when she was held to be incarcerated for her boyfriend's murder and actually lashed out and said that she was being locked up for a frigging island man. Now, that too is not consistent with my reading of that testimony where she said it in a cold, remorseless kind of way. That was my understanding of the testimony. And we submit that she lashed out as a result of being incarcerated. And the trial counsel demonstrated that the term frigging island man is a derogatory term, frigging being akin to a curse word, and island man referring to people of Eastern Caribbean descent. And in this case where you had ten of the jurors who were from Eastern Caribbean islands, such as Nevis, such as St. Lucia, and the Netherlands Antilles, admitting such a statement would inflame the jury and have a substantial impact on their verdict. It was also very relevant, wasn't it? It was very probative of two very important things. No, we submit that it wasn't relevant to show her malice. The government argued and the trial court found that that statement showed her malice, a forethought. First of all, the statement was made two days after the murder was committed. And second, it was a result of being wrongfully locked up for her boyfriend's murder. In this case, the government had no independent eyewitnesses to the murder. There was no incriminating DNA evidence against Donovan. And the circumstantial evidence was based on Donovan's statements and behavior. The evidence of premeditation, deliberation, and malice of forethought would not have been proven without the impermissibly omitted character evidence being the evidence of the prior bad acts and also her statement that she was locked up for a frigging island man. Therefore, in the totality of the circumstances... Is that how one would describe one's boyfriend or fiancé who's just been murdered? I'm just thinking. And the district court did not look at the totality of the circumstances, which it was required to do in its analysis. The district court stated basically that there was enough evidence to convict regardless of error or the error's impact. However, in Yohn v. Love, the Supreme Court stated that the correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence. Now, what error are you talking about now? I'm talking about the error of admitting character evidence of Donovan as a knife-wielding racist. That evidence should not have been included, and its effect on the jury should have been part of the district court's consideration in deciding whether to affirm or reverse the trial court's judgment. And the district court simply failed to do this. Without that impermissible evidence, the government's arguments simply fall apart because they're just based on what they claim are suspicious behaviors and inconsistent recollections. All right, your time is up. We will get you back on rebuttal. Thank you, Your Honor. Thank you. Mr. Fairwood. Good morning, and may it please the Court. Matthew Phelan on behalf of the people. It looks like today is Rule 403, Rule 404 day. Every day is. Harmless error day. Every day is 403. Okay. One of the appeals for the harmless error of the Third Circuit, that's what we are on. In this case, initially I think to get rid of the issue of Ms. Blyden from the hospital and that it really is not an issue because Yeah, yeah, I don't think you have to argue that. Okay, because I was going to say even the co-worker, she told the co-worker. Yeah, it's not a dispute. You know, what is of interest to me is the appellate division found that there was error here. They found there was 403 error, 404B error, but it was harmless. I read your brief again last night. I read it a couple of times. And you never dealt with that. You never dealt with saying that that was an error of the appellate division. And we're reviewing the appellate division's disposition here. So haven't you acknowledged that it's error and the only thing left for you to argue is that it was harmless error? Your brief does not argue that the appellate division erred in saying that this was error. Yeah, I understand the point, Your Honor. But I do believe that I was arguing to uphold the decision of the superior court and find the defendant guilty. So in that way, I was arguing that. I understand that by saying, by skipping A, arguing it's wrong, I've conceded it. And so therefore, it's an analysis of harmless. Well, the appeal is from the appellate division's determination, where they found that this error, that this was error. They will not define it as harmless error under an incorrect standard of review. So my question to you is, you never argued in your brief that the appellate division erred in its determination. You argued to uphold it that any error was, you know, harmless. So how can you stand before us now and say that this 403, 404 rulings were correct? Because I think the brief says any conclusion, if error. You say the results of the court's balancing was not arbitrary or irrational and not an abuse of discretion. I think you don't accept. Well, all right. On 24, you say the trial court was correct in ruling that the evidentiary value was not outweighed by the prejudice. So, I mean, it looks to me like on 24 you mentioned it. But I had the same question Judge Cowen did, which is I'm not convinced that the prior bad acts shouldn't have come in. I mean, if I were the trial judge, I would have let it in because it shows plan. It shows motive. It shows preparation. As I understand the testimony, Ms. Donovan had come at the decedent once before and was rebuffed. Is that right? Yes, sir. And the facts in this case showed that he was stabbed from behind? Yes. In a surreptitious way? Yes. So, having been rebuffed trying to come at him directly, it seems to me that it goes directly to show plan, preparation, exactly. Clear me up a little bit. You say exactly. How does the fact that she previously wielded a knife, threatening him with a knife, and she allegedly, according to the prosecutor, killed him with a knife on this occasion, how does that fit 404B? Which one of the prongs of 404B? The trial court just rattled off every plan, motive, intent, mistake, and the whole thing. How, under the facts of this case, which one of those prongs does her prior wielding the knife fit under? Your Honor, if you recall that after the fact, after my brief, it was in order to get the transcripts of the two pretrial conferences. Yes. Looking at that, you can see that the prosecutor herself was saying that there was motive, there was intent, there was opportunity. I think the prior acts, although similar acts, although obviously character, the probative value outweighs the prejudicial because on those previous occasions, you're talking about her, the defendant, getting so angry with a death threat, not with a close fist, not with a lead pipe, not with a gun. Every single time, it's always described as a large knife, always a large knife. Two prior times, not every time. Several times, but which one of the prongs of 404B does this fit under? There's no allegation here of mistake by the defendant. There's no allegation by the defendant that it was a, which one of the, you know, I had trouble. See, the problem is that the trial court rattled off all of the prongs under 404B. It's clearly wrong. Which one of those prongs is this coming under? There, I want to know that because that's what makes it relevant. And if it didn't fit one of those prongs, it's not relevant. And if it is relevant, then we'll get in to see whether the relevance outweighs the prejudice. But which one of those prongs does it fit under? I think there's a couple. I think that also the- A few of the prongs. Yes. Well, tell me which ones. I didn't know. All right. Which ones? One, I would say, is motive. And how does her having wielded a knife and threatening him previously show lack of, she's lack of motive in this, or her motive to kill him in this instance? Because she was angry. She was a very jealous woman. She was angry about the issue of him fooling around behind her. Well, how does that show she's got a motive to, I mean, because he's fooling around with other women, it shows she's got a motive to kill him because she knows he's skirt-chasing other women. Well, I would say that if he was going to break up with her, just in the instance where the deceased contacted his childhood friend, asked for the business card, she showed up. The defendant was so outraged, she picked up the rock, she blew out the back window. And that shows motive. All right. Any other priority shows besides motive under 404B? I think it identifies her. What? It identifies her. Identifies her how? It identifies the knife. It identifies the deceased or, excuse me, the defendant. What's the identity issue in this case? It's her claim she didn't do it versus a claim by the government she did it, and her claim that some interloper, a burglar or something, came in and killed a guy. What's the identity? That's one of the stories. Yeah, well, she's got a couple stories. But why? I've seen a lot of identity evidence in 404Bs. But what is the identity that she's – someone is trying to identify her as the culprit because it's a signature thing that this culprit does. That's, you know, like bank robbers. They use that identity all the time. How is it in this case, the identity fraud? Because it's consistent with what she did.  Even though her identity is not in dispute. The only dispute here is whether she did it or this interloper did it. Your Honor, as you said in regard to – What about motive? Didn't motive important? I think the judge at some point in the record said motive. Well, let's – can we go to identity first and then to motive? You're through with identity? Wait just a minute. Are you through with anything else on identity? I would add in regard to you pointed out bank robbery cases, identity does come in for previous bank robberies and how they conducted that. It comes in for signature. It shows a signature way a robber pulls off. Okay, anything else on identity? No, Your Honor. Okay, and then you want to go to motive. Most people go to plan and preparation. Plan and preparation. How is it relevant as to that? It shows that she – I mean she has wielded a knife before. She tried to get him one time before, and as Your Honor said, she was rebuffed, and that was when she came at him from the front. She knew she couldn't come at him from the front. After all, he's 6'3", 2'20". The fact that she did it before showed that she had a plan to kill him on this occasion. When you fooled her out with other women. And then you add that to the fact that she says to her co-worker, I have to go to Smith Bay to drop off medicine for my daughter. Okay, so – Her school is that way. But you feel as if it comes under each one of the four problems of 404B. Is that what you're arguing? Yes, Your Honor. Okay, then I guess we go to whether – a balancing. As far as – you know, I'm – I mean I think the appellant's position is very strong that once the jury heard that on a prior – several prior occasions, she wielded a knife to the victim. The trial was over. She did this before and they're going to – regardless of what happened, they're going to find her guilty. How – what is your response to that? This is such devastating character evidence, if it is, or motive or whatever it is, so devastating that even if it has some probative value that the prejudice is overwhelming. Well, because I think that the appellate court, this court, when it's going to review the trial court's decision, it's going to be as to an abuse of discretion. This court is always going to – if it goes through the four-prong test, it's going to be very deferential as to the judge's decision. In this case, you see a lot of discussion back and forth between the two attorneys so that everything was put out on the record. Even when they got to the point that she said there's going to be curative instructions, she said for both attorneys to submit that, and each time when the bad act evidence came in, she gave that curative instruction, which was completely thorough, laid it all out there for the jury. Did that cure any prejudice? Yes. Okay. How about the character evidence of him being a great guy and a good father and so forth? How is that relevant to the charge that she did this and not some officious inland over that came in and stabbed a man? Normally, character evidence of the deceased does not come in. Not normally. It's never let in. The fact that he's a good father has no relevance to whether or not she killed him or not. Correct, Your Honor. So how is it relevant in this case? I believe that it came in through the questioning of the prosecutor with Ms. Woodley in regard to their telephone conversation that day, which then ties into the timeline. I believe that the error was harmless in that situation. Number one, you're conceding that it was error to allow in his good character. I don't see – I don't have a case that says the deceased good character was a good father. You don't have a case that says what? I don't have a case that says the deceased was a good father and therefore it should come in. I don't have that. All right. So you're saying if it was error, it was harmless error. I'm saying it's de minimis. How could it be harmless error when they hear this evidence that he's this great guy, good father, everyone likes him, and it's not going to prejudice his jury? I think you're looking at one page of a transcript of a transcript that's like this. If you look at the entire trial, the character of the deceased does not really play a major role. So why did the government put it in if it didn't make any difference? I don't believe that – I don't believe it was correct for the prosecutor to go that far, and I don't think that initially that was – I don't think that was her intent at all. I think that she was trying to just get from Ms. Woodley. I think it might have been Ms. Woodley's intent because it just all came out about how he was – I mean there's one fleeting reference that was kind of well-prepared that he was the second coming. And it's really Ms. Woodley saying I haven't talked to this woman in 12 years. All of a sudden she calls me and she said, he's dead, dead, dead. So that conversation and then the testimony that comes out after that, I think that was relevant, although going then into his character was a mistake. All right, so if that was a mistake that you're acknowledging at this time, add that mistake to the fact that the jury hears that on several other occasions she wielded a knife. I think the jury is going to have a pretty closed mind at that point. He's a great guy. He's a great father. Judge Barry said he's the second coming of – and she wielded a knife on several prior occasions. What's the jury – you don't think the jury's going to be prejudiced to decide this case under those facts, even with the overwhelming evidence the government had? With the overwhelming evidence that the government had, in regard to each of the prior bad acts, there was a specific curative instruction given to the jury instructing them that it's limited to this purpose. Your Honor, if you're going to talk about that there was an issue of playing on the sympathy, it would be the son of the deceased. He's up there. They're going to be very sympathetic to that, but actually his testimony is relevant because he ties in the prior act. In other words, if I understand what you're saying, it's prejudicial in the sense that it's devastating to the defense's argument, but not unfairly prejudicial in the legal sense. Well, that's not what I understood you said. You said that evidence was prejudicial. As far as the – No, it should not have been admitted. I think we're all on the same page. Are you saying the knives shouldn't have been – No, he's not saying that. No, you're just saying – No, the good father stuff. Absolutely, I disagree with the district court. I believe that that evidence should have come in. On the knives. On the knives, yes. But not the good father stuff. We all agree the good father stuff should not have come in. I don't think I can stand here and defend that. My time is up, but I thank you very much. Thank you. Rebuttal, Ms. Thompson. Your Honors, the government concedes that the good character evidence shouldn't have come in, and the government we submit also failed to show that the bad prior acts should have come in, and that the effect was outweighed by the probative value. The government failed to show that two occasions of prior bad acts fit under any of the prongs of 404B. It didn't show motive that she allegedly wielded knives on two prior occasions. On one of those occasions, as the son testified, was in self-defense after this good loving father apparently threw food out the house and then pushed her. She apparently took the knife up in self-defense. So that occasion was different from the other occasion that she wielded a knife. Wasn't there evidence, though, in one of the knife-wielding incidents about a lover's quarrel, that he was going to leave her? Isn't that the case? There is evidence that she came upon Ms. Woodley, I believe it was, at the residence, and that she had some object in her hand that was identified as a blade, not a similar or the same knife. But why isn't that motive? I mean, if she came, I'm having trouble understanding how, if the passions are running so high that on one occasion the woman would come at the man with a knife, why doesn't that evidence a motive to kill with a knife on a later date? It seems to me directly right there. The occasion was four months before this act. There's no evidence on the record that there was any. And on those other two occasions, there was something that. Are you saying four months is a long time? I'm saying that the nexus between the actual murder and those prior occasions, that the government hasn't proven that there's any continuum, for example. Well, I don't know about that. At page A165 of the appendix, is that Detective Brown or Dee Brown said that my note report indicates that on March 11th, while transporting Denise Donovan to Major Crimes Unit, Ms. Donovan uttered that people have been coming to her telling her that Clayton had a lot of women. Yes, but that was to go towards. She had spoken to Clayton several times, and he denied it. And that was to go towards her version of events, which was that the intruders could have been. But that goes to take issue with what you just said, that it was a long time ago. This was the day of the arrest. Yes, that she made those statements. But it was to support her version of events that this intruder, who was attacking her boyfriend, was in connection with some girlfriend that he may have had. And as to the prejudice, if it's accurate that you do have motive, plan, preparation, and it's appropriate for it to be in that regard, under 403 balancing, it's prejudicial in the sense that it's devastating to your case. I understand that, because I think a typical juror would say, wow, she came at him before with a knife. So I understand the argument that it's prejudicial to your case in the sense that it's harmful, detrimental to your case. But why does that unfair prejudice under the law? There's a critical distinction between damaging to your case prejudice and unfairly prejudicial under the law. It's unfairly prejudicial because once that jury heard that she had wielded a knife against this particular victim on her prior occasion, she was convicted for her propensity to use knives when threatened by her former boyfriend. And the critical inquiry, as it's stated in Yohn v. Love, is the impact of the error on the minds of the jurors in the total setting. It is thus inappropriate to ask whether there was sufficient evidence to support the result apart from the phase of the trial affected by the error. This trial was affected by the error of letting in evidence that she had on prior occasions and two occasions used knives against the defendant. That substantially affected the jury in the setting of the trial, and it denied her a failed trial. Well, there's no point picking the trial apart, but I tell you another thing that could have savaged her is the cross-examination of her sister. I've never seen anyone taken to the cleaners as much as that sister was when she testified to this story about what happened. So there is, as Judge Hardiman says, there is the impermissible prejudice we must look at, and there is the permissible prejudice of proof. Yes, Your Honor. And your time is up. We will take the case under advisement. Thank you. Thank you very much.